Pedro Leonardo MASCHERONI,
Plaintiff–Appellant,

v.

BOARD OF REGENTS OF THE UNI-
VERSITY OF CALIFORNIA, University
of California, Los Alamos National Lab-
oratory, Defendants–Appellees.

No. 93–2021.

United States Court of Appeals,
Tenth Circuit.

July 11, 1994.

Michael D. Bustamante, Albuquerque, NM (Roberto D. Ortega, Albuquerque, NM, and Richard Harrington of Chandler, Wood, Harrington & Maffly, San Francisco, CA, with him on the briefs), for plaintiff-appellant.

Daniel H. Friedman of Simons, Cuddy & Friedman, Santa Fe, NM, for defendants-appellees.

Before BALDOCK, BRORBY, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Dr. Pedro Leonardo Mascheroni ("Dr. Mascheroni") appeals two orders dismissing state law causes of action and a federal Title VII claim against his former employer, the Board of Regents of the University of California (the "Board of Regents"). While we affirm the court's dismissal of the Title VII

claim as time barred, we hold that the court improperly exercised jurisdiction over Dr. Mascheroni's state law claims because the Eleventh Amendment shields the Board of Regents from suit in federal court for alleged state law violations.

## I. BACKGROUND

The Board of Regents operates the Los Alamos National Laboratory in New Mexico under a contract with the United States Department of Energy ("DOE"). Dr. Mascheroni was employed by the Board of Regents between 1979 and 1988 as a physicist at the Los Alamos National Laboratory. This suit arises from his supervisors' actions, which he alleges were based on his national origin, and his ultimate termination from the Los Alamos National Laboratory. Although a United States citizen since 1972, Dr. Mascheroni is Argentine by birth.

In 1986, Dr. Mascheroni criticized some of the Laboratory's projects, suggesting that the Laboratory's federal funding would be better spent on other projects.[1] His supervisors told him to cease his criticism, but he did not. In January 1987, the Board of Regents reduced the Laboratory's workforce. Dr. Mascheroni's position was terminated in March 1987, but he was reassigned to another division in April 1987. Between April and May 1987, Dr. Mascheroni was investigated for alleged security infractions. Based on his supervisors' recommendations, the DOE withdrew his security clearance in September 1987.

Dr. Mascheroni was ultimately dismissed from the Los Alamos National Laboratory in March 1988. Approximately 140 days later, on August 3, 1988, Dr. Mascheroni filed a complaint with the New Mexico Human Rights Commission, alleging discrimination based on national origin. The Commission referred Dr. Mascheroni's complaint to the Equal Employment Opportunity Commission ("EEOC") on November 27, 1990. Because neither the New Mexico Human Rights Commission nor the EEOC filed an action on Dr. Mascheroni's behalf within 180 days of the date he filed his complaint, Dr. Mascheroni received notice of his right to sue in January 1991.

On January 24, 1991, Dr. Mascheroni filed a complaint against the Board of Regents in California Superior Court; alleging multiple tort and breach of contract theories of recovery.[2] The Board of Regents moved for a stay on the grounds of *forum non conveniens*. Meanwhile, on April 24, 1991, Dr. Mascheroni filed a Title VII claim in the United States District Court for the District of New Mexico. In May 1991, the California Superior Court stayed Dr. Mascheroni's state law suit and subsequently denied Dr. Mascheroni's motion to dissolve the stay. Next, on May 7, 1991, Dr. Mascheroni amended his Title VII complaint in the District of New Mexico to include the state law claims asserted in the California Superior Court. He also added to this amended complaint new state law claims of tortious discharge, whistle-blower liability, and prima facie tort.

The district court first granted the Board of Regents' Fed.R.Civ.P. 12(b) motion to dismiss the state law claims. Order of July 17, 1992. The court concluded that the Board of Regents, by virtue of operating the Los Alamos National Laboratory in New Mexico, enjoys the same immunities to tort actions available to New Mexico state governmental entities under the New Mexico Tort Claims Act, N.M.Stat.Ann. §§ 41–4–1 to –29. The court additionally held that Dr. Mascheroni's contract claims were barred by New Mexico's statute of limitations, N.M.Stat.Ann.

---

1. Dr. Mascheroni contends that he fell into disfavor with his supervisors when he criticized a proposed krypton fluoride laser project and sought to promote his hydrogen fluoride laser project in its place. Of course, to the extent that Dr. Mascheroni's difficulties stemmed from a dispute over technical issues, that undermines his claim that he was discriminated against because of national origin. The mere fact that Dr. Mascheroni possesses a protected classification does not give him special rights beyond the right not to be discriminated against *because of the classification*.

2. The state law causes of action included wrongful termination, breach of contract of continued employment, breach of the implied covenant of good faith and fair dealing, and negligent and intentional infliction of emotional distress.

§ 37–1–23. The district court permitted Dr. Mascheroni to amend his Title VII complaint to demonstrate that he had timely filed the original complaint with the New Mexico Human Rights Commission. Because New Mexico is a deferral state, Dr. Mascheroni had to show that the Board of Regents' allegedly discriminatory actions occurred within 300 days of the date on which he filed his complaint with the Commission.[3] It was undisputed that the reduction-in-force ("RIF") at the Los Alamos National Laboratory and the supervisors' recommendation to strip Dr. Mascheroni of his security clearance occurred in excess of 300 days before Dr. Mascheroni filed his complaint with the Commission.

In his second amended complaint filed on April 27, 1992, however, Dr. Mascheroni invoked the continuing violation doctrine in an attempt to cure his failure to file a timely complaint. Dr. Mascheroni argued that his ultimate dismissal from the Los Alamos National Laboratory, which occurred within the 300-day period, was sufficiently related to the RIF and security violation allegations so as to establish a pattern of discrimination based on national origin. Alternatively, Dr. Mascheroni's amended complaint invoked the doctrine of equitable tolling, alleging that because his supervisors actively deceived him and lulled him into not filing a Title VII complaint with the New Mexico Human Rights Commission, the filing period should be tolled. The court, however, dismissed Dr. Mascheroni's amended Title VII complaint as time barred because Dr. Mascheroni failed to demonstrate a continuing violation or to allege facts sufficient to warrant equitable tolling of the limitations period. Order of December 14, 1992.

Before us is Dr. Mascheroni's appeal from both district court orders. He argues that (1) dismissal of the state law claims against a California entity based on New Mexico immunity principles was improper; and (2) his Title VII complaint was timely filed.

## II. STATE LAW CLAIMS

We first consider Dr. Mascheroni's appeal from the district court's dismissal of his state tort and breach of contract claims. Dr. Mascheroni argues that the sovereign immunity bestowed on New Mexico state governmental entities under the New Mexico Tort Claims Act does not apply to a foreign governmental entity whose alleged tortious acts occurred in New Mexico. Alternatively, Dr. Mascheroni asks us to certify this question of first impression to the New Mexico Supreme Court.[4] However, because we conclude that the Eleventh Amendment bars Dr. Mascheroni's state law claims in federal court against the Board of Regents, both we and the district court lack jurisdiction to consider whether the New Mexico Tort Claims Act applies to a California state governmental entity operating in New Mexico, or to certify this question to the New Mexico Supreme Court.

The Eleventh Amendment imposes a constitutional limitation on the jurisdiction of Article III courts. U.S. Const. amend. XI ("The *Judicial power of the United States* shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.") (emphasis added); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (noting that the Eleventh

---

3. Title VII provides a 180–day filing period after the occurrence of an unlawful discriminatory practice. 42 U.S.C. § 2000e–5(e), as amended by § 2000e–5(e)(1). The period is extended to 300 days in "deferral states," where the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110–12, 108 S.Ct. 1666, 1668–70, 100 L.Ed.2d 96 (1988); *Aronson v. Gressly*, 961 F.2d 907, 911 (10th Cir. 1992).

4. The New Mexico Supreme Court accepted certification of essentially the same question in two prior cases, but dismissed certification in both cases on mootness grounds following settlement of the underlying litigations. *Sandford v. Giles*, CIV 92–368 (D.N.M.), *certification accepted* (No. 21,133) (N.M. April 19, 1993), *dismissed* (N.M. November 4, 1993); *In re: Los Alamos Litigations, Individuals and Putative Class Representatives v. Board of Regents of the University of California* (No. 92–6005) (D.N.M.), *certification accepted* (No. 21,326) (N.M. June 28, 1993), *dismissed* (N.M. January 25, 1994).

Amendment "affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.").

Whether an Eleventh Amendment bar that is not raised by the parties *must* be considered *sua sponte* by a court when its applicability is discovered or whether it is subject to the discretion of the court as to whether *sua sponte* to address an unraised Eleventh Amendment issue, has been subject to prolonged debate. In *Pennhurst*, the Supreme Court embraced the mandatory rule, explaining that a "federal court *must* examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. at 919 (emphasis added); *see also Charley's Taxi Radio Dispatch v. SIDA of Hawaii*, 810 F.2d 869, 873 n. 2 (9th Cir.1987) ("The Eleventh Amendment may be described as either creating an immunity for states or establishing a jurisdictional limitation on federal courts ... Like a jurisdictional bar and unlike a traditional immunity, however, the effect of the Eleventh Amendment *must* be considered *sua sponte* by federal courts.") (emphasis added). Other circuits impliedly adopt this mandatory rule. *See, e.g., Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir.1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it sua sponte because it affects our subject matter jurisdiction."), *cert. denied,* —— U.S. ——, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994); *Sindia Expedition v. Wrecked & Abandoned Vessel*, 895 F.2d 116, 119 (3d Cir.1990) (explaining that "we have 'a special obligation' to satisfy ourselves of our own and the district court's jurisdiction"); *Morris v. Washington Metropolitan Area Transit Authority*, 702 F.2d 1037, 1040 (D.C.Cir.1983) ("Such matters casting doubt upon the existence of federal subject matter jurisdiction [on the basis of Eleventh Amendment immunity] are the proper subject of consideration on the court's own motion, as neither the consent or omission of the parties nor the acquiescence of the court can confer jurisdiction where none exists."); *Whiting v. Jackson State University*, 616 F.2d 116, 127 n. 8 (5th Cir.1980) ("Although neither [defendant] has raised the bar of the eleventh amendment, we consider it *sua sponte* be-

cause a defense based upon the eleventh amendment is in the nature of a jurisdictional bar.").

At the same time, however, other authority adheres to a permissive rule that grants courts the discretion whether to consider *sua sponte* a potential Eleventh Amendment bar to a suit against a state. *See, e.g., Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 777 n. 2 (7th Cir.1991) ("We are not obliged to reach the Eleventh Amendment issue because the Eleventh Amendment doctrine of sovereign immunity, though often characterized as jurisdictional, does not function as a true jurisdictional bar."). Two years prior to *Pennhurst*, the Supreme Court appeared to have adopted this permissive rule in dicta in *Patsy v. Board of Regents*, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 2568 n. 19, 73 L.Ed.2d 172 (1982). In *Patsy*, the Court observed that because a state can waive Eleventh Amendment immunity, the Court has "never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." *Id.* Because the Supreme Court's subsequent opinion in *Pennhurst* did not expressly overrule *Patsy*, the continued vitality of the permissive rule remains uncertain.

The two recent cases from our circuit to address this question did not explicitly adopt either the mandatory or the permissive rule, but in both instances the court did in fact consider sua sponte whether the Eleventh Amendment barred its jurisdiction. *AMISUB (PSL) v. Colorado Dept. of Social Services*, 879 F.2d 789, 792 n. 5 (10th Cir.1989), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990); *Esparza v. Valdez*, 862 F.2d 788, 793–94 (10th Cir.1988), *cert. denied,* 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989). In *Esparza*, we recognized that the "Supreme Court appears never to have decided precisely whether a court can or should raise Eleventh Amendment jurisdictional issues sua sponte." *Id.* at 793–94 (quoting both the permissive language from footnote 19 in *Patsy* and the declarative statement in *Pennhurst* that "inferred that sua sponte consideration is necessary").

We need not decide whether we are required or merely authorized to consider *sua sponte* the Eleventh Amendment's applicability because, in either event, the law is clear that we may consider whether the Eleventh Amendment bars Dr. Mascheroni's state law claims against the Board of Regents. And, in this case, whether we are compelled to address the Eleventh Amendment issue or whether we merely exercise our discretion to address the issue, we do address it and we find it dispositive of the issues on appeal pertaining to Dr. Mascheroni's state law claims.

■ The threshold Eleventh Amendment issue is whether the Board of Regents is an arm of the state for Eleventh Amendment purposes. "The Eleventh Amendment arm-of-the-state doctrine bestows sovereign immunity on entities created by state governments that operate as alter egos or instrumentalities of the states." Alex E. Rogers, Note, *Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm–of–the–State Doctrine,* 92 Colum.L.Rev. 1243, 1243 (1992). Under the arm-of-the-state doctrine, courts classify state governmental bodies according to a dichotomy, in which arms of the state enjoy Eleventh Amendment immunity, whereas political subdivisions such as counties and cities do not. *See Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 402, 99 S.Ct. 1171, 1177–78, 59 L.Ed.2d 401 (1979) (denying Eleventh Amendment immunity to a bi-state agency that was more akin to a political subdivision than an arm of the State); *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977) (concluding that an Ohio school board was "more like a county or city than it [was] like an arm of the State"); *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 994 (10th Cir.1993) (en banc) (Eleventh Amendment immunity "extends only to the states themselves and to those governmental entities that are 'arms of the state.' ").

■ Although we have never considered whether the Board of Regents of the University of California is an arm of California and thereby immune from suit in federal court, the Ninth Circuit has held that Eleventh Amendment immunity applies to the Board of Regents of the University of California, the entity Dr. Mascheroni names in the instant suit. *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir.1982); *see also Armstrong v. Meyers,* 964 F.2d 948, 949–50 (9th Cir.1992). In so ruling, the Ninth Circuit relied on language in *Hamilton v. Regents,* 293 U.S. 245, 257, 55 S.Ct. at 197, 202, 79 L.Ed. 343 (1934), that the "regents are, with exceptions not material here, fully empowered in respect of the organization and government of the university, which, as it has been held, is a constitutional department or function of the state government." The Ninth Circuit reached this conclusion by examining the state law characterization of the Board of Regents and the other factors upon which we relied in *Ambus,* 995 F.2d at 1350, such as the state law characterization of the entity, the guidance and control that the state exercises over the entity, the degree of state funding the entity receives, and whether the state has empowered the entity to issue bonds and levy taxes. *See, e.g., Jackson,* 682 F.2d at 1350.[5] We concur with this conclusion and therefore conclude that the Board of Regents is clothed with Eleventh Amendment immunity.

■ That Dr. Mascheroni attaches these state law claims to the Title VII complaint under the doctrine of supplemental jurisdiction does not render the Eleventh Amendment inapplicable because the Supreme Court has held that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919. Thus, Dr. Mascheroni may not sue the Board of Regents in federal court absent express waiver of Eleventh Amendment immunity, *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305, 110 S.Ct. 1868, 1872–

---

**5.** Within our circuit, we have likewise held that the Board of Regents of the University of Oklahoma is an arm of the state under the Eleventh Amendment, *Seibert v. University of Oklahoma Health and Sciences Center,* 867 F.2d 591, 594 (10th Cir.1989), as is the Board of Regents of the New Mexico School of Mines. *Korgich v. Regents of New Mexico Sch. of Mines,* 582 F.2d 549, 551–52 (10th Cir.1978).

73, 109 L.Ed.2d 264 (1990), or unequivocal Congressional abrogation of the States' Eleventh Amendment immunity. *Dellmuth v. Muth,* 491 U.S. 223, 227, 109 S.Ct. 2397, 2399–400, 105 L.Ed.2d 181 (1989). Inasmuch as Congress has not abrogated the States' Eleventh Amendment immunity against state law claims brought in federal court, and because the Board of Regents has not unequivocally waived immunity, we hold that the Eleventh Amendment bars Dr. Mascheroni's state law claims against the Board of Regents.

■ Furthermore, the mere fact that the Board of Regents has appeared in this suit, without explicitly invoking Eleventh Amendment immunity, does not, by itself, constitute a waiver of Eleventh Amendment immunity. The Supreme Court has adhered to a stringent test that waiver of Eleventh Amendment immunity occurs " 'only where stated by the most express language or by such overwhelming implication from the text [of a state statute or constitution] as [will] leave no room for any other reasonable construction.' " *Port Authority,* 495 U.S. at 305, 110 S.Ct. at 1873 (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985)). Accordingly, we have said that a state or arm of the state does not waive Eleventh Amendment immunity merely by appearing in a suit. *AMISUB,* 879 F.2d at 793 ("The State has not 'expressly stated' by its silence that it has waived Eleventh Amendment immunity."). *Accord Richins v. Industrial Construction, Inc.,* 502 F.2d 1051, 1056 (10th Cir.1974); *see also Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146–47 (holding that California did not waive its Eleventh Amendment immunity in the California Constitution, absent an explicit statement to that effect).

Because the Eleventh Amendment imposes a threshold jurisdictional bar to Dr. Mascheroni's state law claims brought in the United States District Court for the District of New Mexico, we dismiss and remand with instructions to the district court to vacate its judgment and dismiss for lack of jurisdiction.

## III. TITLE VII CLAIM

■ Dr. Mascheroni next appeals the district court's dismissal of his Title VII cause of action.[6] We review de novo the court's dismissal of Dr. Mascheroni's Title VII claim because "the sufficiency of a complaint is a question of law." *Ayala v. Joy Mfg.,* 877 F.2d 846, 847 (10th Cir.1989) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)). "We will uphold a dismissal [under Fed.R.Civ.P. 12(b)(6) ] only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Jacobs, Visconsi & Jacobs v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). "[F]or purposes of making the foregoing determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).

### A. Continuing Violation Doctrine

■ The statute of limitations period in Title VII requires precise identification of the occurrence of the "unlawful employment practice[s]." 42 U.S.C. § 2000e–5(e); *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Dr. Mascheroni attempts to comply with this rule by relying on the continuing violation doctrine, which "permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related [to events occurring within the time limitations period] and thereby constitute a continuing pattern of discrimination." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir.1994). The Supreme Court discussed the continuing violation doctrine in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), where it examined nu-

---

6. The Eleventh Amendment does not bar our jurisdiction over Dr. Mascheroni's Title VII claim because the Supreme Court has held that Congress expressly abrogated the States' Eleventh Amendment immunity in its enactment of Title VII of the Civil Rights Act of 1964. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

merous allegations of a realtor's unlawful "racial steering."

The Supreme Court, however, has tempered an expansive treatment of the administrative statute of limitations with reminders of the necessary objectives of setting time bars. For instance, in *Ricks*, the Court observed that limitations periods attempt to "protect employers from the burden of defending claims arising from [distant] employment decisions." *Ricks*, 449 U.S. at 256–57, 101 S.Ct. at 503. There, the plaintiff had first been denied tenure, and thereafter was terminated. Notwithstanding that the ultimate loss of employment followed a decision not to grant tenure, the Supreme Court held that the plaintiff could not use the later date of termination to reach the alleged discriminatory act of denial of tenure. The Court said,

> Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.
>
> .    .    .    .    .
>
> ... [This] is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.... "[T]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful."

*Id.* at 257–58, 101 S.Ct. at 504 (quoting *Abramson University of Hawaii*, 594 F.2d 202, 209 (1979)); *accord Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (applying *Ricks* to 42 U.S.C. § 1983 actions). However, *Ricks* does not provide specific guidelines to distinguish between the occurrence of a "discriminatory act" and a later "consequence."

▪ We have held that a Title VII plaintiff may recover for discriminatory acts occurring prior to the statutory limitations period if at least one instance of the discriminatory practice occurs within the filing period and the earlier acts are "part of a continuing policy or practice that includes the act or acts within the statutory period." *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410,

1415 (10th Cir.1993); *see also Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir.1987) (explaining that the various acts must constitute a "continuing pattern of discrimination"). The discriminatory act occurring within the time period need not constitute a legally sufficient Title VII claim in itself. *Martin*, 3 F.3d at 1415 n. 5. However, the plaintiff cannot simply assert that "acts [occurring] outside the required time limit had a continuing *effect* within the statutory time allowed for suit." *Id.* at 1415; *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (stating the critical question as not whether past practices have current consequences, but whether "any present *violation* exists").

▪ Thus, to establish a continuing violation, Dr. Mascheroni must allege that his employer engaged in a series of related discriminatory acts, at least one of which falls within the limitations period. *Purrington v. University of Utah*, 996 F.2d 1025, 1028 (10th Cir.1993). To determine whether the alleged incidents of discrimination constitute a continuing violation or are discrete unrelated acts, we employ a three-factor inquiry: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Martin*, 3 F.3d at 1415.

▪ Dr. Mascheroni's second amended complaint alleged discriminatory treatment in two instances: (1) transfer from his initial position, purportedly due to a RIF; and (2) suspension of his security clearance arising from his supervisors' allegations of security breaches. He further alleges that the allegations of security violations ultimately led to his dismissal from the Los Alamos National Laboratory. The two allegedly discriminatory acts occurred outside the statutory time period for filing with the New Mexico Human Rights Commission (i.e. in excess of 300 days before Dr. Mascheroni filed his complaint

with the Commission on August 3, 1988).[7] While the third act occurred within the filing period, the court found that Dr. Mascheroni did not allege sufficient facts to create a prima facie case of discrimination solely on the latter termination. The court declined to expand Dr. Mascheroni's filing window to include previous acts based on the continuing violation doctrine and thus granted the Board of Regents' motion to dismiss.

At oral argument, counsel for Dr. Mascheroni conceded that Dr. Mascheroni's ultimate termination from the Los Alamos National Laboratory in March 1988—the only event that falls within the 300–day filing period—did not violate Title VII, nor was it an act of discrimination based on his national origin. Instead, he explained that the termination occurred as a result of budget limitations. Because the termination was perceived as non-discriminatory, Dr. Mascheroni challenged this termination as a discrete actionable event only as a state law claim. For purposes of the Title VII claim, he rests solely on the supposition that the termination was a "predictable result" of prior discriminatory acts and thus should extend the time limitations period under the "continuing violation" doctrine.

Inasmuch as Dr. Mascheroni fails to identify a discriminatory *act* that occurred within the statutory time period and that was part of a continuing violation, he cannot satisfy the first prong of our test. Although the subsequent act need not be actionable in its own right, it must be an act of discrimination or it cannot share commonality with the preceding acts on the most important characteristic of all—that the acts are related *acts of discrimination*. Hence, Dr. Mascheroni has failed to show a continuing violation that includes at least one act of discrimination within the time allowed for suit.

## B. Equitable Tolling

Dr. Mascheroni argues, in the alternative, that the district court should have equitably tolled the charge-filing period due to alleged deceptive conduct of Laboratory supervisors.

We have explained that the time limits in Title VII "will be tolled *only* if there has been 'active deception' of the claimant regarding procedural prerequisites." *Sheerer v. Rose State College*, 950 F.2d 661, 665 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). A claimant who is aware of his Title VII rights, however, is obligated to file promptly or forfeit his claim. *Purrington*, 996 F.2d at 1031.

In his attempt to demonstrate actual deception, Dr. Mascheroni alleges that Los Alamos National Laboratory human resources personnel encouraged him to exhaust all administrative processes and internal grievance mechanisms before filing a Title VII complaint. He also points to supervisors' misrepresentations concerning the Laboratory's efforts to revive his security clearance.[8] And he suggests that a "laboratory culture that avoids outside scrutiny and bristles at outside interference in internal affairs" further pressured him to continue to work within the organization to resolve his differences.[9]

Accepting as true Dr. Mascheroni's allegations, we conclude that the district court properly refused to equitably toll the charge-filing period. Dr. Mascheroni knew of the

---

7. Dr. Mascheroni filed his Title VII complaint on August 3, 1988. However, his initial RIF and transfer occurred in March 1987, and the allegations of security breaches preceded the DOE's suspension of his security clearance in September 1987.

8. Dr. Mascheroni does not appeal the district court's dismissal of his claim to seek reinstatement of the security clearance. Instead, he presents the allegations of security violations as "further evidence" of discriminatory treatment.

9. At oral argument, counsel for Dr. Mascheroni argued that he was further dissuaded from filing a Title VII complaint because his funding proposal for a hydrogen fluoride laser project was still under consideration by Los Alamos National Laboratory management. However, Dr. Mascheroni fails to allege how the management's pending consideration of his funding proposal misled him as to the grounds or procedures required to commence a Title VII claim. *Sheerer*, 950 F.2d at 665.

allegedly false and potentially discriminatory reasons for his initial RIF and allegations of his security breaches more than one year before he was dismissed. Comments by the security division leader and the human resources department may have given him false hope that his problems could be resolved internally, but they do not rise to the level of active deception about the procedures for filing a Title VII claim that we articulated in *Sheerer,* 950 F.2d at 665, and *Wilkerson v. Siegfried Insurance Agency,* 683 F.2d 344, 348 (10th Cir.1982) (the evidence must establish either active deception about the procedural prerequisites of Title VII or that the plaintiff "has in some extraordinary way been prevented from asserting his or her rights").[10] Merely alleging business reasons or a corporate culture that discouraged him from suing promptly does not state a basis for invoking the equitable tolling doctrine. Accordingly, we affirm the court's dismissal of Dr. Mascheroni's Title VII claim as untimely.

## IV. CONCLUSION

We DISMISS Dr. Mascheroni's state law claims and REMAND with instructions to the district court to VACATE its judgment and dismiss for lack of jurisdiction over such claims. We AFFIRM the court's dismissal of the Title VII claim.[11]

---

10. Dr. Mascheroni originally argued that his claims were tolled by the internal grievance filing, but he does not make that argument before this Court. But even if such a claim were asserted on appeal, it would be without merit. *Ricks,* 449 U.S. at 261, 101 S.Ct. at 505–06.

11. We DENY the Appellant's motion to certify to the New Mexico Supreme Court the question of the applicability of the New Mexico Tort Claims Act, and we DENY the Appellees' motion for leave to file "Notice of Modification of Representations at Oral Argument."