**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

JICARILLA APACHE TRIBE,

      Plaintiff-Counter-
      Defendant-Appellant,

  v.

JOHN J. KELLY, in his official capacity
as United States Attorney for the District
of New Mexico; JANET RENO, Attorney
General of the United States; BRUCE
BABBITT, United States Secretary of the
Interior; UNITED STATES OF
AMERICA,

      Defendants-Counter-
      Claimants-Appellees,

  and

STATE OF NEW MEXICO,

      Counter-Defendant-
      Appellee.

No. 96-2192

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-96-700-JP)

Submitted on the briefs:[*]

Wayne H. Bladh, Teresa Leger de Fernandez, Joshua S. Grinspoon, Nordhaus, Haltom, Taylor, Taradash & Frye, LLP, Santa Fe, New Mexico, for Plaintiff-Appellant.

Lois J. Schiffer, Assistant U.S. Attorney General, Washington, D.C., John J. Kelly, United States Attorney, Phyllis A. Dow, Assistant U.S. Attorney, Albuquerque, New Mexico, for Defendants-Appellees.

Tom Udall, Attorney General of New Mexico, Christopher D. Coppin, Assistant Attorney General, Albuquerque, New Mexico, for Counter-Defendant/Appellee State of New Mexico.

---

Before **ANDERSON, HENRY**, and **BRISCOE**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

This is one of several cases involving the validity of Class III gaming on tribal casinos in New Mexico. Plaintiff and appellant, the Jicarilla Apache Tribe, is a federally recognized Indian Tribe in New Mexico. On February 13, 1995, it entered into a Tribal-State Class III gaming compact with the State of New Mexico, as is permissible under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"). On March 22, 1995,

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

the Secretary of the Interior approved the Compact. The Tribe opened its Class III gaming facility on May 20, 1996.

On May 21, 1996, the Tribe brought this action for declaratory relief against John Kelly, the United States Attorney for the District of New Mexico, Attorney General Janet Reno, Bruce Babbitt, the Secretary of the Interior, and the United States, seeking a declaration that: 1) it had the right to continue its Class III gaming under the Compact; 2) its existing Class III gaming activities are lawful and that the United States' threatened closure of the facility was a violation of their Fifth Amendment rights; 3) Class III gaming activities are lawful and authorized by applicable federal law and the Compact; and 4) the defendants have a fiduciary duty to protect the Tribe's Class III gaming activities from interference by persons purporting to act under color of state or federal law.

The defendants counterclaimed against the Tribe and the State, seeking an order declaring that the Class III gaming activities being conducted by the Tribe violated applicable federal and state laws. The district court eventually issued an order declaring the compact was "invalid" and "not in effect" and dismissed with prejudice the Tribe's action for declaratory relief. Jicarilla Apache Tribe v. Kelly, No. Civ. 96-0700 JP/LFG, slip op. at 8-9 (D.N.M. Sept. 18, 1996).[1]

---

[1]Two other similar cases preceded this one in the New Mexico federal district court. Pueblo of Santa Ana v. Kelly, 932 F. Supp. 1284 (D.N.M. 1996), aff'd, 104 F.3d
(continued...)

Our court subsequently decided <u>Pueblo of Santa Ana v. Kelly</u>, 104 F.3d 1546 (10th Cir.), <u>cert. denied</u>, 65 U.S.L.W. 3713 (U.S. Oct. 6, 1997) (No. 96-1617), in which we affirmed the district court decision, 932 F. Supp. 1284, upon which the district court in this case had relied in dismissing the Tribe's action.  In <u>Pueblo of Santa Ana</u>, we held that compacts virtually identical to the one signed by the Jicarilla Tribe were invalid under IGRA because the Governor of New Mexico lacked authority under New Mexico law to execute the compacts on behalf of the state.  <u>See</u> 104 F.3d at 1559.  Both sides to this case have, at various times, conceded that the outcome of this case will be controlled by the outcome of <u>Pueblo of Santa Ana</u>.  <u>See</u> Appellant's Br. at 6 ("[T]he Tribe offered that this case be resolved by the outcome of <u>Pueblo of Santa Ana v. Kelly</u> . . . ."); Appellees' Resp. to Order to Show Cause ("[T]he panel's decision in this case is controlled by <u>Pueblo of Santa Ana v. Kelly</u> . . . .").  We recognized as much in <u>Pueblo of Santa Ana</u>, 104 F.3d at 1548 n.2.

The Tribe, however, now endeavors to distinguish this case in part from <u>Pueblo of Santa Ana</u>, arguing that:  1) the "Tribe raised several arguments in the district court that

[1](...continued)
1546 (10th Cir.), <u>cert. denied</u>, 65 U.S.L.W. 3713 (U.S. Oct. 6, 1997) (No. 96-1617); <u>Apache Tribe of the Mescalero v. New Mexico</u>, No. Civ. 92-0076 JC/WWD (D.N.M. June 6, 1996).  In both of those cases, the district court concluded that the compacts at issue, which were virtually identical to the Jicarilla Tribe's Compact, were invalid.  The district court in this case therefore issued an order to show cause why it should not reach the same result in this case as in <u>Pueblo of Santa Ana</u> and <u>Mescalero</u>.  After hearing argument on the order to show cause, the district court entered the order dismissing the Tribe's action.

- 4 -

were not raised or resolved in the Santa Ana case," in particular that the State of New Mexico is estopped, under state law, from asserting the invalidity of the Compact and that the State violated its obligation to negotiate in good faith; and 2) the State "has affirmatively filed a pleading directly against the Tribe" thereby waiving its Eleventh Amendment immunity from the Tribe's claim of failure to negotiate in good faith. Appellant's Resp. to Order to Show Cause at 2-3. Such efforts to distinguish Pueblo of Santa Ana are unavailing.

In Pueblo of Santa Ana, we held that:

(1) IGRA imposes two separate requirements -- the State and the Tribe must have "entered into" a compact *and* the compact must be "in effect" pursuant to Secretarial approval -- before class III gaming is authorized; (2) state law determines the procedures by which a state may validly enter into a compact; and (3) in determining whether the State and the Tribes have entered into compacts, valid and binding under New Mexico law, we agree with and follow the New Mexico Supreme Court's decision in [State ex rel.]Clark[ v. Johnson, 904 P.2d 11 (N.M. 1995)].

Pueblo of Santa Ana, 104 F.3d at 1553. In Clark, after reviewing both state constitutional and statutory law, the New Mexico Supreme Court held that the Governor of New Mexico, Gary Johnson, lacked the authority to sign the gaming compacts on behalf of the State. 904 P.2d at 22-26. As indicated above, we agreed with that decision in Pueblo of Santa Ana and concluded that the Governor's lack of authority was fatal to the compacts' validity under IGRA. The Supreme Court has just denied certiorari in Pueblo of Santa Ana, so our decision in that case is now the law of this circuit. Pueblo of Santa Ana compels the conclusion in this case that the Compact between the Jicarilla and the State,

- 5 -

signed also by Governor Johnson, is invalid under state law and thus fails to comply with IGRA.

The Tribe also argues that it intended to file a cross-claim against the State, asserting that the State failed to negotiate in good faith, but it was prevented from filing that claim by the district court's premature dismissal of this case. The Tribe thus seeks a remand to "allow the Tribe to file a crossclaim against the State for failure to negotiate in good faith." Appellant's Resp. to Order to Show Cause at 3. We have held that the district court correctly dismissed the Tribe's action because the Compact is invalid under state law. Thus, the dismissal was neither "premature" nor otherwise inappropriate.

Moreover, under Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114 (1996), the Eleventh Amendment shields the state from an action seeking to compel the state to negotiate with the Tribe in good faith.[2] That Eleventh Amendment immunity can, however, be waived. See Blatchford v. Native Village of Noatak, 501 U.S. 775, 786 n.4 (1991); Johns v. Stewart, 57 F.3d 1544, 1553 (10th Cir. 1995). Waiver is not easily presumed. "[A]ny waiver by the state of its Eleventh Amendment immunity must be unequivocal . . . . Constructive consent is insufficient." Johns, 57 F.3d at 1553 (citations omitted). We have held that the mere appearance of the state or a state entity in a lawsuit

---

[2]The Supreme Court in Seminole held that Congress lacked the authority to abrogate the states' Eleventh Amendment immunity in IGRA, which was enacted pursuant to the Indian Commerce Clause. Thus, the provision in IGRA authorizing tribes to sue states for failing to negotiate gaming compacts in good faith did not waive the states' Eleventh Amendment immunity.

is insufficient to waive Eleventh Amendment immunity. See Mascheroni v. Board of Regents, 28 F.3d 1554, 1560 (10th Cir. 1994); AMISUB (PSL), Inc. v. Colorado Dep't of Soc. Servs., 879 F.2d 789, 793 (10th Cir. 1989). "[W]aiver of Eleventh Amendment immunity occurs '"only where stated by the most express language or by such overwhelming implication from the text [of a state statute or constitution] as [will] leave no room for any other reasonable construction."'" Mascheroni, 28 F.3d at 1560 (quoting Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239-40 (1985))). In Mascheroni, we held that the Board of Regents' filing of a Fed. R. Civ. P. 12(b) motion to dismiss the plaintiff's complaint did not, without more, waive the Board's Eleventh Amendment immunity. Id. at 1556, 1560.

The Tribe argues that the State waived its Eleventh Amendment immunity by filing a motion to dismiss the Tribe's claims against the United States. We reject that argument. We note initially that it appears the State never actually filed a motion to dismiss.[3] Rather, the State's only action was to enter an appearance. Even if it did file

---

[3]The Tribe asserts that "the State served on the Tribe a motion to dismiss the Tribe's claims against the United States" on July 25, 1996. Appellant's Resp. to Order to Show Cause at 4. The docket sheet for this case shows no such motion filed. See Appellant's App. at 272-76. Furthermore, in the transcript of proceedings held on September 5, 1996, on the court's order to show cause, there were references to a motion to dismiss. The attorney for the United States referred to "the fact that Mr. Coppin [the Assistant Attorney General for the State] . . . did do a Motion to Dismiss which was responded to by the government which had not yet been filed." Appellant's App. at 85.

(continued...)

such a motion, that, without more, does not waive the State's Eleventh Amendment immunity. See Mascheroni, 28 F.3d at 1556, 1560.

For the foregoing reasons, we AFFIRM the district court's dismissal of the Tribe's complaint.

---

[3](...continued)
Later in the proceedings, the Tribe's attorney stated that "[t]he State of New Mexico has not filed any response to the counterclaims that were alleged by the United States. The state has not yet filed any claim against the tribe . . . ." Id. at 91. The Assistant Attorney General for the State subsequently stated:

> As far as the state filing its motion in this case, the state has entered its appearance, Your Honor, I entered my appearance on August 2nd, shortly after I started circulating our motion to dismiss the tribe's claim. The state does not believe it needs to file any motions in this case. The state believes that these are legal issues that can be ruled on quite easily.
>
> . . . .
>
> Also to clarify the record, the state has no intention of filing a claim against the tribe.

Id. at 157-58. Thus, it appears that, while there was some discussion of the State filing a motion to dismiss, and perhaps even drafts of such a motion were circulated, no such motion was ever actually filed. The only formal action taken by the State, according to the record in this case, was an entry of appearance.