**Exola DIGGS, Plaintiff-Appellant,**

v.

**WESTERN ELECTRIC COMPANY, INC., Defendant-Appellee.**

No. 78–1056.

United States Court of Appeals, Tenth Circuit.

Dec. 4, 1978.

Michael T. Braswell of Porter & Braswell, Oklahoma City, Okl., submitted on brief, for plaintiff-appellant.

William D. Curlee, Oklahoma City, Okl. (Lytle Soule & Emery, Oklahoma City, Okl., on the brief), for defendant-appellee.

Before McWILLIAMS, McKAY and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

Exola Diggs, a black female, brought suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, against the Western Electric Company, claiming that she had been discriminated against because of her race when Western Electric failed to employ her in its Oklahoma City plant. By answer, Western Electric denied any discrimination. Trial of the case was to the court, sitting without a jury, and the judge found for Western Electric. Diggs now appeals the dismissal of her action.

■ The issue to be resolved by us is whether the trial court's finding that Western Electric did not discriminate against Diggs because of her race is clearly erroneous. Our study of the record convinces us that such finding is not clearly erroneous, and, on the contrary, is amply supported by competent evidence. It is on this basis that we affirm.

Diggs applied with Western Electric on three separate occasions. The circumstances surrounding Diggs' last, or third application, are such that it can virtually be eliminated from consideration on appeal. Diggs was apparently most dissatisfied that she had not been hired on either of her earlier applications, and because of that fact she appeared at Western for a third time. When her two earlier applications could not be immediately located, a "scene" ensued. To ease the situation, Diggs was allowed to complete a third application. She was not hired; however, there was testimony that at that particular moment Western Electric was not hiring, and the trial court so found. Additionally, on her third visit Diggs indicated that she was then studying to become a registered nurse. Such study made it likely that any employment with Western Electric would be only temporary and until she completed her nurses' training.

We turn now to Diggs' two earlier applications for employment with Western Electric. Just how Diggs in the first instance determined to apply for work with Western Electric is not clear. She did testify, however, that her daughter was working for Western Electric at the time, and had been so employed for many years. In any event, Diggs did apply twice at Western Electric, her visits being about 10 months apart. On each occasion she did not get beyond the first interview.

Diggs' evidence tending to show discrimination based on race was, at best, sketchy. She, of course, did show that she was black, and not hired. Whether Diggs showed that she was qualified is debatable. Western Electric did concede that it was hiring at the time of these applications. Statistical evidence offered by Western Electric showed that in fact it hired minorities, as well as whites, at or around the dates of Diggs' two applications. In this general regard Western Electric's evidence also indicated that since 1967 it has maintained an Affirmative Action Program which had been audited and approved by the Government on a regular basis. The evidence also showed that there was no pattern of employment discrimination by Western, and that actually its employment of members of minority groups exceeded the percentage of

minority members in the Oklahoma City area work force.

The two Western employees who interviewed Diggs did not recall the details of their actual interviews. However, after refreshing their individual memories from the written record, each testified as to the reasons why Diggs did not go beyond the first interview, none of which had anything to do with her race. Specifically, each testified that Diggs' preference was to start her employment on the day shift, whereas, under the contract Western had with the union, new employees were to start on the night shift. Additionally, Diggs, who had no previous manufacturing experience, indicated that she had some eye troubles and hay fever, each of which would prevent her from performing certain entry level jobs. Without going into further detail, the foregoing recitation indicates that the trial court's findings in the instant case were most definitely not clearly erroneous, but on the contrary were amply supported. The trial court did not simply make a conclusory finding of "no discrimination," but specifically found the precise reasons why Diggs was not employed, none of which concerned her race.

■ On appeal Diggs' basic position is that Western's hiring practices are themselves discriminatory. In this regard, for example, Diggs asserts that Western recruits new employees primarily by word-of-mouth from personnel presently in Western's employ, and that such practice is inherently suspect. It may well be that Diggs learned that there were job openings at Western from her daughter, who, as previously mentioned, was herself a long-time employee of Western. However, word-of-mouth was not the only method used by Western in recruiting new employees. A representative of Western's human relations department, who incidentally was himself black, testified at length regarding the placing of ads concerning job openings in various newspapers whose readers were believed to be predominately black. In such circumstance, even if Western Electric relied in part on word-of-mouth recruiting,

its statistical evidence showing a racially balanced work force eliminates any adverse inference which might otherwise arise from such reliance. See *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 272 (10th Cir. 1975).

Diggs also makes complaint about the fact that the two Western employees who interviewed her were white, and not black, and that they exercised in each instance a subjective judgment, and had been given no objective standards to go by. As concerns Diggs' broad allegation of discriminatory hiring practices, it is important to note that statistical evidence indicated that Western's employment of members of minority groups exceeded the percentage of minority members in the Oklahoma City area work force. Evidence that employment practices, which were fair in form, produced an employee population with substantially the same proportion of blacks as were in the area work force has been held to support a finding that an employer did not engage in discriminatory hiring practices. *Robinson v. Union Carbide Corp.*, 538 F.2d 652 (5th Cir. 1976), *modified on other grounds*, 544 F.2d 1258 (5th Cir. 1977), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977). In the instant case, we fail to see how Western's employment practices are inherently discriminatory in nature, and the evidence supports a finding that they had no discriminatory impact.

■ As above stated, the case in reality boils down to one question: Are the trial court's findings that there was no discrimination against Diggs on account of her race clearly erroneous? Under Fed.R.Civ.P. 52(a) such findings must on appeal be upheld unless they be clearly erroneous. And they are not to be deemed clearly erroneous unless, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); and *Toussaint v. Ford Motor Company*, 581 F.2d 812, 815 (10th Cir. 1978). After study of

the record we do *not* have a conviction that a mistake has been made. On the contrary, on the basis of the record before him, the trial judge's disposition of the matter would appear to be the proper one. In our view, Western Electric articulated a nondiscriminatory reason for not hiring Exola Diggs, which meets the burden imposed on it by the *Board of Trustees of Keene State College v. Sweeney*, —— U.S. ——, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, —— U.S. ——, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Judgment affirmed.