**Edward GUTIERREZ,
Plaintiff-Appellant,**

v.

**The DENVER POST, INC., a Colorado
corporation, Defendant-Appellee.**

**No. 81–1098.**

United States Court of Appeals,
Tenth Circuit.

Oct. 4, 1982.

Paul A. Baca, Denver, Colo., for plaintiff-appellant.

Carl F. Eiberger, Denver, Colo. (Perry L. Goorman, Denver, Colo., with him on the brief), of Eiberger, Stacy & Smith, Denver, Colo., for defendant-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Edward Gutierrez, of Mexican-American national origin, appeals from the district court's order dismissing his amended complaint and taxing him with costs and attorneys fees related to the defense of Gutierrez's claim of emotional distress in an employment discrimination suit he brought against The Denver Post, Inc. (Post) pursuant to 42 U.S.C. § 2000e (Title VII) and 42 U.S.C. § 1981.

Gutierrez charged the Post with discrimination against him on the basis of his national origin, basically anchored to denial of job promotions and bonus assignments. Further, Gutierrez alleged that the Post retaliated against him as a result of his filing of charges with the Equal Employment Opportunity Commission (EEOC) by discharging him on April 29, 1977, for alleged neglect of duty, *i.e.,* not reporting for work in violation of the collective bargaining agreement. Later that year, Gutierrez was reinstated to his former position.

Gutierrez worked as a printer in the composing room of the Post since 1960, except for the period 1963–1966. The supervisory structure of the Post composing room consists of a general foreman and 22 assistants. The general foreman determines, based upon his own judgment and that of his assistants, who shall be appointed to assistant supervisory positions when vacancies occur. In 1974, Gutierrez filed a complaint of discrimination with the EEOC alleging that he had been continuously, since 1966 to 1972, denied promotions and work assignments which would entitle him to higher compensation and other benefits because of his national origin.

The case was tried to the trial court for three days following extensive pleadings and discovery. In addition to receiving the detailed testimony of some five witnesses for Gutierrez and some eight witnesses for the Post, the court considered voluminous exhibits. On December 26, 1980, the district court rendered its memorandum opinion and order with extensive findings of fact and conclusions of law. The court concluded that Gutierrez had failed to establish a *prima facie* case of any claim asserted. Specifically, the court found that: the Post had not unlawfully denied Gutierrez job promotion or bonus assignments in violation of Title VII and § 1981, inasmuch as the evidence established that Gutierrez was *not* qualified for promotion to the position of assistant foreman or any other position; Gutierrez was not as qualified as those persons who had received promotions; Gutierrez had not been administered unequal disciplinary treatment; the

disciplinary treatment administered to Gutierrez was for legitimate, nondiscriminatory purposes; the Post had not harassed or retaliated against Gutierrez in violation of Title VII or § 1981; and, finally, Gutierrez's claim of emotional distress (arising from the alleged discrimination) was frivolous. The court awarded costs and attorneys fees to Post for its defense of the emotional stress claim advanced by Gutierrez.

■ We have carefully reviewed the entire record. We have done so pursuant to the mandate of Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A., that "in all actions tried upon the facts without a jury ... findings of fact shall not be set aside unless clearly erroneous." The trial court's findings are presumptively correct and the appellate court cannot disturb them unless they are clearly erroneous. *Ramey Construction Company v. Apache Tribe of Mescalero Reservation,* 673 F.2d 315 (10th Cir. 1982); *Lyles v. American Hoist & Derrick Co.,* 614 F.2d 691 (10th Cir. 1980); *Francia v. White,* 594 F.2d 778 (10th Cir. 1979); *Diggs v. Western Electric Company, Inc.,* 587 F.2d 1070 (10th Cir. 1978). In order to conclude that the trial court's findings are clearly erroneous we must be "left with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969), *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 365, 68 S.Ct. 525, 526, 92 L.Ed. 746 (1948).

On appeal, Gutierrez contends that the district court erred (1) in finding, as a matter of law, that he had failed to establish a *prima facie* case of discrimination regarding relevant promotions and his termination, (2) in finding that he failed to establish that the supervising official had a discriminatory attitude towards the Mexican-American employees of the Post, (3) by considering matters outside of the evidence adduced at trial, and (4) in finding that his claim of emotional distress was frivolous and thus abusing its discretion by awarding attorneys fees to the Post on this claim.

In *Nulf v. International Paper Co.,* 656 F.2d 553 (10th Cir. 1981), this court upheld the district court's dismissal of plaintiff's sex discrimination in employment claim involving a job-promotion. We there pertinently observed:

> In a Title VII case, the initial burden is on the employee to make a prima facie showing of discrimination by the employer. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Only when such a showing has been made does the burden shift to the employer to articulate "some legitimate, nondiscriminatory reason" for the questioned action. *Id.* If the employer meets this burden, the employee must show that the stated reason is actually a pretext for prohibited discrimination. *Id.* at 804, 93 S.Ct. at 1825.

\*    \*    \*    \*    \*    \*

*McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, sets forth the legal standards we are to apply in deciding whether an employee has established a prima facie case of employer discrimination:

> "This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Id.* at 802, 93 S.Ct. at 1824. *McDonnell Douglas* involved hiring, and the Court recognized that "the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. "But *McDonnell Douglas* did make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory

criterion illegal under the Act.' " *Furnco Construction Co. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)).

\*    \*    \*    \*    \*    \*

. . . The elements of a prima facie case set forth in *McDonnell Douglas* have been applied to promotion cases. *See Stastny v. Southern Bell Telephone Co.,* 628 F.2d 267, 281 (4th Cir. 1980); *Fitzgerald v. Sirloin Stockade,* 624 F.2d 945, 954 (10th Cir. 1980); *Olson v. Philco-Ford,* 531 F.2d 474, 477 (10th Cir. 1976). To meet the prima facie test, Nulf had to show that there were promotional opportunities available that were filled by males, that she was qualified for promotion, and that despite her qualifications she was not promoted. This she failed to do.

\*    \*    \*    \*    \*    \*

The three-step analysis of discrimination claims established in *McDonnell Douglas* has repeatedly been applied to discriminatory discharge cases. *See, e.g., Lujan v. New Mexico Health and Social Services Department,* 624 F.2d 968, 970 (10th Cir. 1980); *Reeb v. Marshall,* 626 F.2d 43, 45 (8th Cir. 1980); *Ray v. Safeway Stores, Inc.,* 614 F.2d 729, 730–31 (10th Cir. 1980). Nulf was required to present a prima facie case of discriminatory discharge and to prove that any legitimate, nondiscriminatory reason articulated for the discharge was merely a pretext for discrimination. *See Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 26–28, 99 S.Ct. 295, 296–297, 58 L.Ed.2d 216 (1978); *Ray v. Safeway Stores, Inc.,* 614 F.2d at 731. 656 F.2d at pp. 557, 558, 559.

■ The record reflects that the trial court carefully considered the evidence and correctly found/concluded that Gutierrez had not made a *prima facie* case of a discriminatory refusal to promote. There is substantial evidence that Gutierrez was not qualified for promotion to assistant fore-

man. Thus, we hold that it is clear that the trial court was justified in concluding that Gutierrez had not made a *prima facie* case. There is nothing in the record to support a contention that the Post's articulated reasons for non-promotion of Gutierrez were in anywise pretextual, *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The trial court's detailed findings are supported by the record and establish that Gutierrez, in the scope of his employment with the Post, did not: establish that his Mexican-American ancestry had anything to do with job promotions or bonus assignments; undertake on-the-job training courses offered by the Post designed to keep employees abreast of new composing room techniques and automated technological changes, even though two fellow employees of Mexican-American ancestry, Ruth Garcia Stevens and Russell Tafoya, did attain promotions to supervisory positions after availing themselves of the "in-house" training opportunities; have the requisite capabilities, training and experience for promotion or that degree of interest, initiative, attitude to work, knowledge of the work, readiness to assume extra work or the ability to work well with people required for promotion of assistant foreman. The record also shows that Gutierrez was somewhat of a "loner" and did not have rapport with his fellow employees; and that he did not display the attitude, personality or initiative required of a supervisor. The trial court found and pertinently observed that: the Post had in fact advanced five or six employees of Mexican-American ancestry to supervisory positions; commencing in the 1970's the Post had embarked on a fair and realistic minority recruitment program; and, minorities at the Post were able to progress into supervisory positions without regard to race or national origin.

The district court gave painstaking consideration to each of Gutierrez's contentions of job discrimination and found them to be without merit. We agree. The record contains substantial evidence supporting the trial court's findings and conclusions.

The district court found that Gutierrez's claim for damages by virtue of emotional distress related to the alleged employment discrimination practiced upon him by the Post based upon his national origin, was "frivolous, unreasonable and clearly without foundation." [R., Vol. I, p. 163]. We agree. Gutierrez did not introduce any evidence beyond his own assertions on this issue. On the other hand, the Post presented overwhelming evidence, including that of medical experts, that any stress suffered by Gutierrez was in nowise related to his employment. Under these circumstances, the trial court did not err in directing that the Post shall recover the costs of the action as to all claims and that attorneys fees shall be awarded the Post as costs in relation to its defense of Gutierrez's claim of emotional distress.

WE AFFIRM.