**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DIANE G. DEFLON,

      Plaintiff-Appellant,

v.

DANKA CORPORATION
INCORPORATED, Survivor and
Successor to Danka Industries, Inc.,
aka Danka Business Systems,

      Defendant-Appellee.

No. 99-2239
(D.C. No. CIV-98-626-MV/LFG)
(Dist. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **ANDERSON** and **EBEL**, Circuit Judges.

Plaintiff-Appellant Diane G. DeFlon ("DeFlon") filed an action against her

former employer, Defendant-Appellee Danka Corporation, Inc. ("Danka"), in the

United States District Court for the District of New Mexico. DeFlon alleged

various sex discrimination claims under Title VII, 42 U.S.C. § 2000e et seq.

("Title VII"). DeFlon alleged facts to support four distinct Title VII claims in her

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

complaint: (1) sex discrimination based on a hostile work environment theory; (2) sex discrimination in the form of disparate compensation; (3) sex discrimination based on the failure to promote; and (4) sex discrimination resulting in constructive discharge. DeFlon also asserted a claim under the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and two New Mexico state tort law claims: one claim of negligent supervision and retention, and one claim of intentional infliction of emotional distress. The district court granted summary judgment to Danka on all claims, including the state law claims, and DeFlon appeals the judgment of the district court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## BACKGROUND

Danka is engaged in the business of selling office equipment and has a regional office in Albuquerque, New Mexico.[1] The events giving rise to this case occurred while DeFlon was employed as a sales representative at this Danka sales office from January 1994 until she resigned in May 1997.

DeFlon initially began work as a sales representative at Danka in January 1994. DeFlon's primary sales territory at Danka was the sale of fax machines to government agencies. DeFlon sometimes also sold fax machines to private and

---

[1] We review the evidence in the light most favorable to DeFlon, the nonmoving party on summary judgment.

commercial accounts and color copiers to government accounts. DeFlon filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 22, 1997, and resigned from Danka five days later.

DeFlon's claims largely focus on the conduct of Dan Sawyers ("Sawyers"), who was DeFlon's direct supervisor at Danka from mid-to-late 1995 to June 1996. Almost every morning during this period, Sawyers would call DeFlon into his office. Sawyers would "rant and rave" at DeFlon, belittling her work performance and threatening to fire her, while pacing in front of DeFlon and waiving his finger in her face. Sawyers treated other women at Danka in a similarly abusive manner.

DeFlon made a verbal complaint about Sawyers to Human Resources on January 29, 1996, which was followed by two written complaints dated February 5, 1996, and March 31, 1996. Although DeFlon's complaints describe Sawyers' abusive and belittling conduct, they do not state that he engaged in this conduct because she was a woman.

In response to DeFlon's complaint, Claude Burris, a supervisor at Danka, told her there was nothing he could do except "keep an eye on it to make sure [Sawyers] didn't do anything to harm [DeFlon]." Burris did, however, report these complaints to Steve Lasky, the regional sales manager at Danka. When Burris spoke to Sawyers about the complaints, Sawyers apparently told Burris,

that "he did not want [DeFlon] in the branch; that she was worthless; that she was very emotional, and that if he couldn't get her out with numbers, he'd get her out by . . . working on her emotional side."

In June 1996, Sawyers was terminated. Sawyers testified that he was told he was being fired because he had failed to meet sales goals.

DeFlon also asserts that Lasky demeaned her while she was employed at Danka. Lasky once informed DeFlon that she would have to reach or exceed her quotas or he would be forced to let her go.

DeFlon also objects to the conduct of Van Hartley ("Hartley"), who served as DeFlon's supervisor at an unspecified time for an unspecified duration. DeFlon observed Hartley referring to other female workers in a degrading manner. On another occasion, Hartley asked DeFlon about the status of a sale and then commented, "if you can't close it, I'll [Hartley] have to sleep with her [the client]. I know what that old bag needs." During the last three weeks of her employment at Danka in April 1997, DeFlon was "shunned" by Hartley and Chester Lovato ("Lovato"), a coworker. Hartley and Lovato apparently refused to speak to her or acknowledge her existence.

In addition to making the above-described allegations concerning the conduct of supervisors and coworkers, DeFlon asserts that there were a variety of other practices at Danka that made it a difficult place for her to work.

- 4 -

For example, DeFlon argues that Danka resolved "poaching" problems in a discriminatory manner. Poaching occurs when a sales representative crosses over into another sales representative's territory. Danka has a strict policy against poaching, requiring that the deal be "reversed" and that the commission be given to the representative whose territory was poached. Tom Grover, a male sales representative poached an account from DeFlon. When DeFlon complained about it to Hartley, her supervisor at the time, he did not offer to reverse the deal but he did offer DeFlon a commission on one of Grover's accounts. The poached deal was eventually reversed at the request of Terrell, the manager of the human resources department.

DeFlon also complains about the manner in which fax sales representatives were awarded commissions and territory. From time to time, Danka sales representatives were permitted to "throw in" a fax machine in order to sweeten a copier deal. On these occasions, the fax sales representative (i.e., DeFlon or Debbie Fowler) would not receive a commission. Elroy Duran reported doing this on one, nongovernmental account. DeFlon also argues that when Jim Witt came in as the major market manager at Danka he "took" the best fax sales territories from DeFlon and Larkin.

DeFlon also claims that women at Danka were given less desirable office space and office furniture. With respect to the office furniture, Burris testified

that DeFlon and Larkin had less desirable furniture but that he believed Lasky got them new furniture.

DeFlon further asserts that Danka treated employees differently with respect to its sick leave policy. DeFlon always submitted her time sheets when she had taken sick leave, even though sales representatives were not required to do so. DeFlon also complains about an incident occurring in April 1997. One day when DeFlon was on sick leave, Hartley, her supervisor at the time, called and told her to "get crutches" and come to work to attend a demonstration that she was supposed to give to a prospective client. DeFlon did not go to work but arranged for the company representative to do the demonstration.

DeFlon filed a complaint against Danka in the United States District Court for the District of New Mexico in May 1998, alleging various violations of Title VII and the EPA. DeFlon also brought two New Mexico state law tort claims: a claim of negligent supervision and retention, and a claim of intentional infliction of emotional distress. Danka moved for summary judgment on all of the claims. The district court granted the motion as to all claims. DeFlon appeals the judgment of the district court.

## DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." <u>Simms v. Oklahoma</u>

ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

## I. Title VII Claims

DeFlon alleged four distinct Title VII claims in her complaint: (1) sex discrimination based on a hostile work environment theory; (2) sex discrimination in the form of disparate compensation; (3) sex discrimination based on the failure to promote; and (4) sex discrimination resulting in constructive discharge.

### A. Hostile Work Environment Claim

The district court found that Danka was entitled to summary judgment on DeFlon's hostile work environment claim. The district court first assessed what evidence could be considered in connection with the hostile work environment claim because some of the alleged conduct occurred outside the Title VII period of limitations. The district court concluded that the acts that occurred outside the limitations period could not be considered under the continuing violation doctrine.

After reviewing the remaining factual allegations (i.e., those acts that occurred within the period of limitations), the district court concluded that DeFlon had failed to show that a genuine issue of material fact existed concerning her hostile work environment claim. While DeFlon urges that the district court erred in both steps of its analysis, we find no error on the part of the district court with respect to either of these conclusions.

### 1. Application of the Continuing Violation Doctrine

42 U.S.C. § 2000e-5(e)(1) requires that a charge of discrimination be filed within 180 days after the alleged unlawful employment practice occurred. However, "[i]f a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days." EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988). New Mexico is one such state where the period of limitations is extended to 300 days. See Mascheroni v. Board of Regents of the Univ. of Cal., 28 F.3d 1554, 1557 (10th Cir. 1994).

In this case, DeFlon filed a complaint with the New Mexico Human Rights Division and the EEOC on May 22, 1997. DeFlon concedes that much of the discriminatory conduct occurred prior to July 26, 1996 (the cut-off date for the limitations period) because Sawyers was fired in June 1996. To avoid this problem, DeFlon claims that the incidents occurring before and after July 1996

constitute a continuing pattern of discrimination, and that the acts occurring before July 1996 can therefore be considered under the continuing violation doctrine.

The continuing violation doctrine "'permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related [to events occurring within the time limitations period] and thereby constitute a continuing pattern of discrimination.'" Mascheroni, 28 F.3d at 1560 (10th Cir. 1994) (alteration in original) (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)). The Supreme Court in Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980), however, recognized that one of the purposes of the limitations period is to "protect employers from the burden of defending claims arising from employment decisions that are long past."[2] Thus in order to "recover for discriminatory acts occurring prior to the statutory limitations period . . . at least one instance of the discriminatory practice [must] occur[] within the filing period." Mascheroni, 28 F.3d at 1561. The act within the statutory period must be a discriminatory act itself, and not simply a consequence of an act that is outside the statutory period. Id. at 1561. To show a continuing violation a plaintiff can either show "(1) a series of related acts taken against a

_____

[2] In Ricks, the plaintiff was denied tenure and later terminated. The Court found that although the termination flowed from the denial of tenure, the plaintiff could not use the termination to reach the allegedly discriminatory act of denying tenure. Ricks, 449 U.S. at 257.

single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." Purrington v. Univ. of Utah, 996 F.2d 1025, 1028 (10th Cir. 1993). The district court concluded that DeFlon had failed to make the necessary showing under either of these tests.

a) Related Acts

"To prove a series of related acts [DeFlon] must show that the acts rise to the level of a 'dogged pattern' of discrimination as distinguished from 'isolated and sporadic outbreaks.'" Purrington, 996 F.2d at 1028 (quoting Bruno v. W. Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987)). The Tenth Circuit utilizes the following three-part inquiry to determine whether there is a continuing violation: "'(i) subject matter–whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence–whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.'" Mascheroni, 28 F.3d at 1561 (quoting Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993)). Although each of these factors is relevant to the inquiry, this is not an exclusive list of factors. See Purrington, 996 F.2d at 1028.

As an initial matter, we observe that we may only consider some of the post-limitations period conduct on which DeFlon relies because there is no evidence to show that DeFlon had knowledge of a number of the comments that she now claims were directed at other employees. We have held that a court cannot consider harassing conduct about which the plaintiff had no knowledge. See Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). Technically, Hirase-Doi addresses whether conduct about which the plaintiff has no knowledge should be considered for purposes of assessing whether a genuine material fact exists as to the plaintiff's hostile work environment claim. We believe it is also appropriate, however, to exclude conduct about which the plaintiff did not have knowledge in assessing a continuing violation argument. This court has noted that "[p]ermanency depends on what the plaintiff knew or should have known at the time of the violation" and that we should inquire into "whether the acts have the degree of permanence which should alert the employee to the duty to assert her rights." See Purrington, 996 F.2d at 1028. In addition, Purrington requires a showing of a "series of related acts taken against a single individual." Id. (emphasis added).

Further, a number of the other acts and comments about which DeFlon complains cannot be considered to show a continuing violation of sexual

- 11 -

harassment against her because she fails to link them to the fact that she is a woman. Many incidents in this record appear to be gender-neutral and therefore do not appear to be gender-based discriminatory acts. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." (citation and quotations omitted)). This court has emphasized that "[a]lthough the subsequent act need not be actionable in its own right, it must be an act of discrimination or it cannot share commonality with the preceding acts on the most important characteristic of all -- that the acts are related acts of discrimination." Mascheroni, 28 F.3d at 1562. Because DeFlon does not show a gender-based discriminatory animus on the part of Hartley, Terrell, Lovato or Sigmon, nor a relationship between those acts and Sawyers' pre-limitations period acts, we do not consider the acts of the former employees to be extensions of Sawyers' allegedly discriminatory acts. DeFlon should have become aware of her rights at the time she was subjected to Sawyers' abuse, which preceded the applicable statute of limitation period. Because this court has observed that "a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred," Bullington v. United Air Lines, Inc., 186

F.3d 1301, 1311 (10th Cir. 1999) (emphasis added), DeFlon's claim fails on this ground.

b) <u>Maintenance of a Company-Wide Policy</u>

"A continuing violation may [also] be established with evidence of a pervasive, institutionalized system of discrimination which typically involves discrimination through an employer's policies or practices." <u>Purrington</u>, 966 F.2d at 1029 (internal citations and quotations omitted). "A refusal to rectify a discriminatory practice or a repetition of the practice itself can render the act a continuing violation of civil rights." <u>Id.</u> (citation and quotations omitted). Thus, we must determine whether Danka either engaged in a company policy of discrimination or refused to rectify a continuing practice that discriminated on the basis of gender.

The only company policy that appears to span the time period both before and after July 1996 is the policy of allowing copier sales representatives to include a fax machine to sweeten a copier deal. It does not appear, however, that this conduct can be attributed to discrimination on the basis of sex. Similarly, DeFlon fails to establish a company policy of sexual discrimination with regard to the company's policies pertaining to sick leave and poached deals.

For these reasons, we agree with the district court that DeFlon has not shown a continuing violation of her rights, such that the court cannot consider the pre-July 26, 1996, conduct in connection with her hostile work environment claim.

### 2.       Hostile Work Environment

Under Title VII, discrimination against "an individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's . . . sex" is an unlawful employment practice.  42 U.S.C. § 2000e-2(a)(1).

In Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986), the Supreme Court stated that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Id. at 67 (citation omitted) (alteration in original).  The existence of sexual harassment must be determined "in light of the record as a whole and the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." Id. at 69 (quotations and citation omitted).  The mere utterance of a statement which "'engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." Id. at 67 (citations omitted).

In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Court clarified the elements of a claim for gender discrimination resulting from a hostile work environment:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Id. at 21-22.

This court has further explained that "[a]ny harassment of an employee 'that would not occur but for the sex of the employee . . . may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.'" Gross, 53 F.3d at 1537 (alteration in original) (quoting Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987), aff'd after remand, 928 F.2d 966, 971 (10th Cir. 1991)). As noted above, "'[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.'" See id. (quoting Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994)). The Court emphasized that harassment between men and women is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). The critical issue "is whether members of one sex are exposed to

disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id.

In short, for DeFlon to survive the summary judgment motion, this court, after assessing all of the evidence in context, must conclude that: (1) the conduct stemmed from a sexual animus; and (2) the conduct in question was severe or pervasive enough to create a work environment that was objectively and subjectively abusive and hostile. See Gross, 53 F.3d at 1539; Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994).

As explained above in Section I.A., this court's consideration of DeFlon's hostile work environment claim is limited to conduct that occurred after July 26, 1996. Similarly, this court cannot consider conduct of which DeFlon was not aware. See Hirase-Doi, 61 F.3d at 782. And, in addition, this court cannot consider acts of unpleasantness or even unfairness that are not, on the record, tied to gender. Those exclusions leave insufficient acts to support DeFlon's hostile work environment claim. "For a hostile environment claim to survive a summary judgment motion, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Penry v. Fed. Home Loan Bank, 155 F.3d 1257, 1261 (10th Cir. 1998) (quoting Davis v. U.S. Postal

Serv., 142 F.3d 1334, 1341 (10th Cir. 1998)).  We therefore conclude that the district court properly granted summary judgment to Danka on the hostile work environment claim.

**B.      Disparate Compensation Claim**

DeFlon's disparate compensation claim is based on two types of conduct by Danka, both of which relate to the payment of commissions to sales representatives.  DeFlon's first claim of disparate compensation pertains to the manner in which Danka calculated the commissions for new employees.  When sales representatives begin their employment, Danka provides its sales representatives with some income protection in the form of a "guaranteed commission" or "a promise not to drawback."  The purpose of both policies is to provide the sales representative with a "cushion" when he or she first starts, because it often takes months of work to close a sale.  A guaranteed commission means that the sales representative will receive a certain amount of pay in commissions even if he or she does not sell a single piece of equipment.  A guarantee not to drawback, on the other hand, means the sales representative will receive commissions on whatever he or she actually sells, without being penalized with a "drawback" for failing to meet the quota.  A drawback is a reduction in the amount of commission paid to an employee in his or her next paycheck for the failure to meet his or her quarterly quota.

DeFlon alleges that when she was hired she was given a base salary of $1500 per month plus commission, with a promise that she would not receive a drawback for the first quarter. DeFlon asserts that she was treated differently in this respect from men. DeFlon provides evidence that when Elroy Duran ("Duran"), Lovato, and Joe Kirvin ("Kirvin"), all male, began working at Danka, they received a base salary, plus commissions, with a promise of a guaranteed commission for the first 120 days.[3]

DeFlon's second theory of disparate compensation also relates to the payment of commissions. DeFlon asserts that although she received drawbacks, male employees did not. Duran testified that he was supposed to receive a drawback on one occasion but did not. DeFlon, however, allegedly received a drawback on two occasions when she failed to meet quota.

DeFlon asserts that this evidence is sufficient to establish a prima facie case under Title VII of disparity in pay based on sex. The district court granted summary judgment for Danka on this issue, reasoning that DeFlon had failed to demonstrate a prima facie case because she did not provide any evidence that she was actually paid less than male employees. The district court also noted that

---

[3] DeFlon also argues that Smith was given a guaranteed commission at the time he was hired. This allegation is inadmissible hearsay.

DeFlon had not shown that she was similarly situated to the male employees who received guaranteed commissions. We affirm the judgment of the district court.

Although we agree with the district court, we also note that DeFlon points to no evidence in the record indicating that this conduct occurred within the 300-day limitations period, nor does our review reveal any evidence concerning this issue. We therefore find that DeFlon's Title VII disparate compensation claim is time-barred under 42 U.S.C. § 2000e-5(e), and affirm the district court's grant of summary judgment to Danka on this alternate ground.

## C. Failure to Promote Claim

DeFlon argues that she was denied two possible promotions while employed at Danka in violation of Title VII. These potential promotions were: (1) the government copier sales position; and (2) the color copier sales position. With respect to the government copier position, the record reflects that Diane Larkin served as Danka's government sales representative for copier sales. When Larkin resigned in February 1996, Danka did not hire a new sales representative to fill her position. Instead, Larkin's accounts were split up between DeFlon, Sawyers, and Signor. In terms of the color copier position, there is evidence that, at some unspecified time, Danka hired a man, Leon Radszwarski, to a new position to sell color copiers. DeFlon did not know whether this position involved an increase in commissions or salary. Furthermore, DeFlon did not know that Danka was

planning to hire a color copier representative and therefore did not express an interest to anyone in the position.

The district court granted summary judgment for Danka on both of these claims, reasoning that: (1) Larkin's sales territory was divided among a number of Danka employees, and thus there was no opening available, and (2) DeFlon never applied for the color copier sales position. We agree with the district court's disposition of this claim.

A plaintiff may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination. See Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999); Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995). DeFlon offers no direct evidence of discrimination on her failure to promote claim. We must therefore determine if there is sufficient indirect evidence for DeFlon to survive summary judgment.

The Supreme Court set forth the framework for assessing circumstantial evidence of discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, the plaintiff initially bears the burden of establishing a prima facie case. See id. at 802. Once the plaintiff has established a prima facie case, the burden of production shifts to

the defendant who must articulate a facially nondiscriminatory reason for its employment action. See id. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual. See id. at 804.

In order to establish a prima facie case of discriminatory failure to promote under Title VII, a plaintiff must demonstrate: (1) there was a promotional opportunity available; (2) the plaintiff was qualified and had established availability for the position; (3) despite the plaintiff's qualifications, she was not promoted to the position; and (4) the promotional opportunity was filled.[4] See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362 (10th Cir. 1997).

---

[4] In Perry v. Woodward, 199 F.3d 1126, 1136-37 (10th Cir. 1999), this court noted that some cases in this circuit have indicated that a prima facie case of discriminatory failure to promote requires a showing that the position was filled by someone not a member of the protected class. Compare Simms, 165 F.3d at 1328 (Title VII); Sprague, 129 F.3d at 1362 (Title VII); Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 (10th Cir. 1997) (Title VII; § 1981); Randle v. City of Aurora, 69 F.3d 441, 451 n.13 (10th Cir. 1995) (Title VII, § 1983, § 1981); Meredith v. Beech Aircraft Corp., 18 F.3d 890, 894 (Title VII); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469 (10th Cir. 1992) (Title VII); Luna v. City & County of Denver, 948 F.2d 1144, 1147 (10th Cir. 1991) (Title VII); Gutierrez v. Denver Post, Inc., 691 F.2d 945, 947 (10th Cir. 1982) (Title VII; § 1981); Higgins v. Oklahoma, 642 F.2d 1199, 1201 (10th Cir. 1981) (Title VII); Nulf v. Int'l Paper Co., 656 F.2d 553, 558 (10th Cir. 1981) (Title VII), with York v. Am. Telephone & Telegraph Co., 95 F.3d 948, 954 (10th Cir. 1996) (Title VII); Hickman v. Flood & Peterson Ins., Inc., 766 F.2d 422, 424 (10th Cir. 1985) (Title VII); Mortenson v. Callaway, 672 F.2d 822, 823 (10th Cir. 1982) (Title VII); Thornton v. Coffey, 618 F.2d 686, 690 (10th Cir. 1980) (Title VII); Mohammed v. Callaway, 698 F.2d 395, 398 (10th Cir. 1983) (Title VII). Because we are not required to decide this case based on the fourth prong of the prima facie case, we decline to resolve the discrepancy on this point.

DeFlon's claim that she was discriminated against when she did not receive Larkin's position fails on a number of levels. First, the record reflects that Larkin quit her job in February 1996. Thus, this act occurred outside the 300-day period of limitations and is therefore time-barred under 42 U.S.C. § 2000e-5(e). In addition, the record reflects that no one was immediately hired to fill Larkin's position. Rather, Larkin's territory was divided up among three other sales representatives, one of whom was DeFlon. Further, there is no evidence in the record to show that, at the time Larkin left, Larkin's position was, in fact, a promotion for DeFlon, and this court has found that the denial of an application for a lateral position is not an adverse employment action under Title VII. See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998). Finally, DeFlon ultimately received both Larkin's position and a raise in March 1997.

With respect to DeFlon's claim that she was denied a promotion to the color copier position, there is similarly no evidence demonstrating that this position was a promotion, as opposed to a lateral transfer. DeFlon admitted, for example, that she had no actual knowledge of whether the salary for the copier position was higher than the salary for her fax sales position. Further, DeFlon did not establish her availability and qualifications for that position. We thus conclude that this claim must fail because DeFlon has failed to prove that she suffered an adverse employment action.

### D. Constructive Discharge Claim

DeFlon next argues that the district court erred in concluding that she was not constructively discharged. Specifically, DeFlon urges that the district court erred when it reasoned that she could not have been constructively discharged because she had failed to establish a hostile work environment claim. She points to the following conduct in support of this claim: (1) the shunning by Hartley and Lovato; (2) the denial of the color copier position; (3) the incident where Grover poached her account; and (4) the comment by Terrell that he was "backing away" and the "finger points at you."

Although a plaintiff bringing a constructive discharge action typically alleges that she was forced to resign from her job due to sex discrimination, "we have found constructive discharge based on retributive acts that follow a complaint of sex discrimination." See Jeffries v. Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998). "[T]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986). However, "[i]f an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." Jeffries, 147 F.3d at 1233. We conclude that none of

the conduct DeFlon seeks to attribute to Danka is sufficient to meet the standard for finding constructive discharge in this circuit, and we affirm the grant of summary judgment to Danka on this claim.

As an initial matter, we conclude that the district court properly granted summary judgment to Danka on DeFlon's constructive discharge claim associated with the hostile work environment theory. DeFlon has not shown that a genuine issue of material fact exists as to her hostile work environment claim, and the hostile work environment theory therefore cannot support the constructive discharge claim.

In addition, even assuming the district court erred in failing to consider DeFlon's constructive discharge claim predicated on retaliation, DeFlon cannot succeed on this claim because she cannot show retaliatory discrimination. To make out a prima facie case of retaliation, DeFlon must prove:

> (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action.

Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993). Although the record reflects that DeFlon filed an EEO complaint on May 22, 1997, the retaliatory conduct about which she complains occurred before she engaged in this

protected activity.[5]  Thus, DeFlon cannot show a causal connection between any protected activity and the alleged retaliation.  In addition, DeFlon cannot show that any of the conduct to which she points was "adverse action."  The shunning and Terrell's statements, though certainly unpleasant, cannot be considered adverse employment action.  In addition, the poaching incident was rectified in March 1997–one month before DeFlon quit.  Finally, there is no evidence to show that the color copier position would have been a promotion rather than a lateral transfer.  In conclusion, DeFlon does not allege facts that are sufficient to make out a prima facie case of retaliation.  In total, she has failed to allege sufficient facts to support a claim of constructive discharge.

## II.    Equal Pay Act Claim

A plaintiff in an EPA claim has the burden of proving the following elements in order to make out a prima facie case under the statute: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances."  Tidwell v. Fort

---

[5] DeFlon also argues in other portions of her brief that she assisted Ritchie with the filing of an EEO complaint in March 1997.  As noted above, this claim is not supported by the record.

Howard Corp., 989 F.2d 406, 409 (10th Cir. 1993); see also Sinclair v. Auto. Club of Oklahoma, 733 F.2d 726, 728 (10th Cir. 1984).

> If a prima facie case is so established under the EPA the defendant must undertake the burden of persuading the jury that there existed reasons for the wage disparity. . . . These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex.

Tidwell, 989 F.2d at 409.

The district court concluded that DeFlon had failed to establish a prima facie case because there was no evidence to show that DeFlon was actually paid less than her male counterparts. The district court held that DeFlon had only established that a guaranteed commission is theoretically preferable to a promise not to draw back. In addition, the district court held that DeFlon had failed to show that she was similarly situated to the employees to which she sought to compare herself.

The EPA requires a plaintiff to demonstrate that she was paid at a lesser wage rate than men for "equal work on jobs the performance of which requires equal skill, effort, and responsibility." See 29 U.S.C. § 106(d)(1). Although the men to whom DeFlon seeks to compare herself were referred to as "sales representatives" and were compensated in a similar manner to DeFlon (i.e., base pay plus commissions), DeFlon does not demonstrate that they sold fax machines for government accounts as she did. In addition, there is insufficient evidence in

the record to establish that their jobs required "equal, skill, effort, and performance" as compared to DeFlon's position. We therefore conclude that the district court properly granted summary judgment to Danka on this claim.

### III. Negligent Supervision and Retention Claim

Under New Mexico law, "[a]n individual or entity may be held liable in tort for negligent hiring, negligent supervision, or negligent retention of an employee even though it is not responsible for the wrongful acts of the employee under the doctrine of respondeat superior," which makes employers liable only for intentional wrongful acts committed by their employees. See Los Ranchitos v. Tierra Grande, Inc., 861 P.2d 263, 269 (N.M. Ct. App. 1993). "The torts of negligent hiring and negligent retention of an employee are based on the act or omission of the employer," with liability in New Mexico premised upon "the 'knew or should have known' standard." See F & T Co. v. Woods, 594 P.2d 745, 747 (N.M. 1979). In sum, in order to survive summary judgment on her negligent supervision and retention claim, DeFlon must show that a genuine issue of material fact exists as to whether: (1) a Danka employee engaged in a wrongful act that injured DeFlon; and (2) that Danka was negligent in supervising or retaining that employee.

The district court granted summary judgment to Danka on DeFlon's negligent supervision and retention claim, reasoning that the wrongful act on

which it was predicated was DeFlon's Title VII hostile work environment claim that the district court had previously rejected. DeFlon asserts that the underlying wrongful act was not the Title VII claim, but the common law tort of sexual harassment.[6] She thus argues that the court should have considered all the alleged conduct when assessing whether to grant summary judgment on DeFlon's negligent supervision and retention claim. We affirm the judgment of the district court, although based on slightly different reasoning.

Based on our finding that the district court properly granted summary judgment for Danka on the Title VII hostile work environment claim, we agree with the district court's conclusion that DeFlon's Title VII sexual harassment claim does not provide the requisite "wrongful act" for DeFlon to survive summary judgment on her negligent supervision claim. Further, we agree that

---

[6] In her brief on appeal, De Flon argues in the alternative that the underlying wrongful act supporting her claim of negligent supervision and retention is the common law tort of intentional infliction of emotional distress. For the reasons discussed in the next section, DeFlon has not established the facts necessary to support a claim of intentional infliction of emotional distress because the actions of which she complains are not "outrageous" as contemplated by New Mexico common law. We therefore find that DeFlon's negligent supervision and retention claim cannot properly be founded upon her claims of intentional infliction of emotional distress. Accord Phifer v. Herbert, 848 P.2d 5, 9 (N.M. Ct. App. 1993) (noting that an intentional infliction of emotional distress claim that is based upon allegations of sexual harassment must be based upon acts that are "sufficiently outrageous" to be generally intolerable in civilized society), overruled on other grounds by Spectron Dev. Lab. v. Am. Hollow Boring Co., 936 P.2d 852 (N.M. Ct. App. 1997).

DeFlon's claim of negligent supervision and retention predicated on common law sexual harassment is not restricted to conduct occurring within the 300-day limitations period for Title VII. Nonetheless, we conclude that Danka is entitled to summary judgment because, even when taking all the allegedly wrongful conduct into consideration, DeFlon has not demonstrated sufficient evidence of common law sexual harassment under New Mexico law.

Relying on Coates v. Wal-Mart Stores, 976 P.2d 999 (N.M. 1999), DeFlon argues on appeal that New Mexico recognizes a common law tort of sexual harassment. That may or may not be the case, as a general proposition, but DeFlon has not established that New Mexico recognizes a tort of common law sexual harassment based upon the facts she alleges here, which merely set forth a claim of discrimination based upon gender. Although Coates refers to a "common law sexual harassment tort" at one point in dicta, see id. at 1002, it is obvious that the court was contemplating that the tort consisted of sexual groping, sexual assault and battery or other substantial overt sexual conduct toward a female employee. See id. at 1003. Here, we do not believe New Mexico would find that the alleged conduct of which Danka had knowledge or should have had knowledge constitutes the common law tort of sexual harassment or, for that matter, any other common law tort under New Mexico law. Thus, we affirm summary judgment on that claim.

**IV. Intentional Infliction of Emotional Distress Claim**

The district court dismissed DeFlon's intentional infliction of emotional distress claim on the ground that Sawyers' conduct could not be attributable to Danka, and that for this reason, DeFlon had failed to show extreme and outrageous conduct. DeFlon argues that the district court erred in dismissing the claim on this ground. We affirm the grant of summary judgment to Danka, but on the alternate ground that the conduct about which DeFlon complains was not sufficiently severe to give rise to a claim of intentional infliction of emotional distress.

Under New Mexico law, a plaintiff asserting an intentional infliction of emotional distress claim must demonstrate that the defendant's conduct was "extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress." Coates, 976 P.2d at 1009. An employer may be held liable for the intentional infliction of emotional distress inflicted by an employee. See id.

Unlike DeFlon's Title VII claims, there appears to be no issue in this case concerning the statute of limitations. Thus, the district court properly stated that it could consider all of Sawyers' conduct and the other pre-limitations conduct alleged by DeFlon in connection with this claim. In this case, there is evidence suggesting that Danka had knowledge of Sawyers' conduct by virtue of various

complaints made by DeFlon and other women. In addition, DeFlon alleges that a number of managers at Danka engaged in abusive conduct. Although DeFlon's working environment at Danka was certainly unpleasant, and there is evidence that DeFlon's supervisors, particularly Sawyers, acted in an inappropriate manner, we find that the evidence of employee misconduct, even when viewed in the light most favorable to DeFlon, was not sufficient to establish extreme and outrageous conduct. Extreme and outrageous conduct is that which "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Stieber v. Journal Pub. Co., 901 P.2d 201, 205 (N.M. 1995) (citation and quotations omitted). We therefore affirm the grant of summary judgment to Danka on the intentional infliction of emotional distress claim on this alternate ground.

## CONCLUSION

We AFFIRM summary judgment for Danka on all of DeFlon's Title VII claims (hostile work environment; disparate compensation; failure to promote; constructive discharge), the EPA claim, and the New Mexico state law tort claims.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge